This is 2010-1431, ARONOWITZ v. HOME DIAGNOSTICS. Before you start, there was one item that the panel would like to suggest. The next time that you submit copies and patents in the appendices, I would suggest that they be legible. The copies that are in the appendices are totally legible. And you can't rely on the fact that we all have 20-20 vision or otherwise, because we had to order some of those patents up to be able to read them. So make sure that whenever you do submit appendices and documents that they are legible, at least to the average person. Thank you. Mr. Bernstein, are you reserved five minutes for rebuttal? I do. Thank you. May it please the Court, my name is Bernardo Bernstein. My first time before this Court, and it is an honor. I'm here representing Mr. Jack Aronowitz. We've appealed the lower court's decision, basically two parts of the decision, and then there are alternative issues. But the main issue on the 192 is the lower court's factual finding of non-infringement of that patent. And then on the 580 patent, we appealed essentially the lower court's not getting to the issues that were remanded for determination by the lower court. First, do you agree that the latter ruling to which you referred, the ruling not to reopen the case with respect to the 580, don't we review that for an abuse of discretion? I think ordinarily it would be reviewed for an abuse of discretion. However, in this case, we have a remand by this Court with a very specific mandate. And I believe we've cited 11th Circuit authority, which the Court can apply. No, you're certainly correct in terms of what our mandate said. But isn't it certainly possible that there could be a very express and clear mandate? Maybe that was clear, maybe it wasn't. But anyway, let's assume there could be a very clear mandate. Isn't it certainly possible that the party or the parties could act in such a way, after the mandate comes down and the case is back in the district court, that it would be not an abuse of discretion as a general proposition? I know we have to look at this case. Not an abuse of discretion as a general proposition to dismiss for failure to prosecute, no matter what the original mandate said. We don't agree with that. We believe that the only basis for... You're saying even... I'm sorry for jumping in on you because time goes fleetingly here. But you're saying that even if a mandate comes down, and if after that, even if a party, in a sense, walks away from the case and abandons it for 5, 10, 15 years, a court doesn't have discretion at that point to call the case over and dismiss it? We don't believe so. If the court were to do it on its own, that might be one thing, if it's been languishing for 10 years or 5 years. However, once... and this presents a unique set of circumstances, but the parties themselves, we don't believe, have control over the mandate. Once a mandate has been issued, it is something that needs to be complied with. You're saying a party can't, quote, walk away from the case, close quote. That's correct. And in any event, the district court still has an independent duty to ensure that the mandate is followed. But what happens in a situation where the mandate issues, district court has it, they have to perform certain functions, but the parties just don't do anything for 5 years? Is that up to the district court to call attention to the parties and the subsequent actions that have to be taken, or is it up to the parties to do that? I believe it would depend on the circumstances. I believe that once the mandate is issued, then there is an obligation on the district court to ensure that the mandate is adhered to. And in this case, when the mandate was issued, there were certain steps that the district court did, in fact, take to ensure that the mandate is being followed. With respect to the 192 patent, it even entered partial determination of those issues. So they did take some action. They did take some action. They promised additional action, and then the mandate ultimately was not fulfilled. But what about the second step? I guess I understand your argument a little with respect to the first stage of this. But then when the district court goes to the parties and says, come forward with something, I'm going to administratively dismiss this or whatever, and you have to come in and give me something, but I'll do it without prejudice, and you don't come forward for 3 years. How does the fact that there was a mandate 9 years before the conclusion of that 3-year date mitigate the fact that there's been an abandonment of the claim? We believe that by reasserting or actually taking steps to reopen the case, there was not an abandonment. I don't think there was any intention to abandon. Well, the steps to reopen came 3 years after the request, right? There was an order that was entered that essentially directed the parties to either reconstruct the record or to stipulate as to how to proceed with the remaining issues, at which point then either party could apply to the court to reopen the case. Right, and that took you 3 years? Yes. So why can't that? Is it because you think 3 years isn't long enough? I mean, you would agree, would you not, that your argument with respect to compliance with the mandate doesn't apply to that particular portion of circumstances, right? Well, our argument, I believe, is that the abandonment issue is not available in order to produce a discharge of the mandate. So what about the order issues in 2006, and you wait 30 years, and then you come in 30 years later to the district court and say, now we're prepared to show you what the record says, yada, yada, yada. Do you think under those circumstances he could say, no, wait a minute, this case has been abandoned, you're out of here, you can't reopen it? Well, I mean, in that case, I probably would think that 30 years would be... So there's no firm mandate rule, it's just a question of the circumstances, right? Well, I think there is a firm mandate rule. Well, then why wouldn't it apply to the 30-year wait? I think the mandate rule is, under the 11th Circuit, flexible. However, it's flexible in terms of there are three areas in which the lower court doesn't need to necessarily follow the mandate. I don't think we have those exceptions in this case. Of course, in here, the mandate was, as you said, to do certain things. Supposing you had a case where the mandate was simply decision of the district court vacated, case remanded to the district court for further proceedings, without the express itemization that we do have in this case. Would we have a different circumstance there, in your view? I think the circumstances might be different, because in this case, there were very specific directions as to what had to be done and what had to be found, and exactly the order in which it had to be done. The record does reflect, but for the three years of inactivity, that there was, over a period of eight years, a fair amount of litigation dealing with those specific items that were remanded to the lower court. I'm going to ask your colleague there, but I looked at the docket entries in the back of the appendix. There does seem to have been some back and forth going on. There were some references to your client trying to find a lawyer. One lawyer left the case, and then there was a suspension. There seemed to be some back and forth communication going on, or some kind of activity, at least some kind of activity that was sufficient to generate these various docket entries. What do you have to say about that? Well, there were situations where, as you pointed out, my client was looking for another lawyer. At one point, there was a stay imposed because TCPI, the corporate entity, had filed for bankruptcy. But even before and after those periods of time, before Judge Davis rendered his findings, the parties had actively and actually fully briefed on the papers the issues that had been remanded, including pertaining to the 580 patent. And that was also the case after the case, again, restarted around 2002. And what I should also note is one of the unique aspects of this case is that the order of the court below can still be complied with, provided there is a stipulation between the parties. And we have a situation here, and it wasn't disputed in the answer brief, where the defendant does not want to stipulate. And we could be talking about submitting the final issues on the papers, for example, on the cold record. And there was some debate below as to whether those issues should be decided on the cold record or whether they should be decided with a new trial. And we took the position upon the remand being issued that given the court's ruling in the opinion, that the record was perhaps not fully developed and that we would need a new trial. And, of course, Judge Davis did not agree with us on that. And he issued his ruling on the trial record. So we have a situation here where there is enough in the record that the lower court could have picked up and finished what Judge Davis had begun simply because the parties had briefed fully all the issues in the case, including under the 192 and the 580. But I'm not sure how that helps you with respect to the abandonment argument. Did you go to the district court in 2006 after they issued that order and say, here's the way we would like to proceed, and say, well, the other side doesn't agree with us, but let the judge work it out? We did not. We had that option under the magistrate judge's ruling, which was trumped by the district court judge's order, because the magistrate judge allowed us the opportunity to submit a proposal as to how to proceed. The district court's order, which was issued a couple of days later, basically said either the parties recreate the record or they stipulate. And then when either one of those takes place, then either party can apply to reopen the case. So what happened three years later that triggered your coming in? Was there a stipulation? There was no stipulation. So what was different three years later that wasn't the case three years when he issued the order? My office had tried to reconstruct the record, and as we laid out, we couldn't reconstruct the record, except that we were able to reconstruct, to a large extent, the trial record. And so I conferred with opposing counsel. The motion was going to be objected to, and so we did go in to seek to reopen the case. I see I'm running out of time. We'll restore two minutes of your rebuttal time.  You had a lot of questions. Mr. Curran. Good afternoon, Your Honors. May it please the Court, my name is Glenn Curran, and with me is David Loda of the firm Mail and Haley DiMaggio. We were original counsel way back in 1995 when this case was tried. We were all much younger in those days. I was going to say I have memory, sirs, but that's not even fair. My record, sirs, I believe two of Your Honors actually sat on the 1998 panel. Yeah, and I wasn't born yet. Actually, I had children that weren't born yet. We even jokingly said around this office that if it languished much longer, I would have to teach my son about this case for the next appeal. If it pleases the Court, it is our position, not surprisingly, that this Court should affirm the trial court below in all respects. I know that you've read the briefs and you're familiar with it, and so on our argument I never want to repeat what you've already read. And my thought was, unless Your Honors had questions for me at the outset, my thought was to point out what I think are some of the glaring omissions from the briefs. Well, let me just ask you, it seems to me, and this is on the 192, that the case cries out for a new trial. Why am I wrong about that? Well, I would say that Your Honor, I would disagree with Your Honor in at least two respects. One, I don't think we ever get to the 192 case, first of all, because of the abandonment of the case twice. And I will come back and talk about the abandonment issue because I believe it pertains to both the 192 and the 580 patent. But first of all, let's say that we got past that somehow, and I don't believe that we do. But if we were to get past that, 192 was sent back with very explicit directions by this Court. Judge Davis very meticulously went through those, called us in for a status conference and said, what is your read on these? We submitted stipulations on what had to be done. He followed those, I thought, meticulously, submitted detailed amended findings and conclusions. No objections were ever taken to those, and there they sat. In fact, the parties agreed that he had fulfilled what he needed to do on the 192. So they never asked for a new trial? Not on the 192. No, the new trial was only asked for, if I recall correctly, and I think it's admitted in the pleadings, was only asked for on the 580. Because 192, everything had been discussed. Again, what Your Honor sent back last time was very, very specific. So Judge Davis decided the 192 infringement issue, claims 11, 14, and 15, based on the existing record from the 96 trial? The 1995 trial, yes, Your Honor. 1995 trial. That is correct. What had happened, just to fill in a little detail there, he had opined in his written opinion that there was no porosity gradient in the membrane. And Your Honor said, yes, but I wonder if maybe there was evidence of a porosity gradient after the chemical conditioning. And so we took that back, and he looked at it, looked at the record, looked at the testimony, quoted to the record again, and said, no, there's no porosity gradient here before or after. But one thing he said in response to a question, I think from Judge Prost, that the abandonment issue applies both to 580 and to the 192 patent. How would that be? I mean, the 192 patent, there was a judgment, as I read the judgment, correct me if I'm wrong, there was a judgment of non-infringement issue with respect to that patent. And that's up here on appeal. The other part of the case is the judgment which refused to reopen matters with respect to the 580 patent. So, I mean, I don't see the abandonment. How does the abandonment issue touch on the 192 patent? I see how it relates to the 580, but how does it touch on the 192? I believe it touches in this respect. The amended findings and conclusions were issued back, I believe, within 18 months of the mandate from this court. So approximately 2000, as I recall. No action was taken from that point. In fact, stipulations were filed by both sides saying this is right for judgment. At that time, plaintiffs then entered into what we internally call the first abandonment of the action. And nothing took place for years. But you can't blame, I don't think you can fairly blame, again, leaving aside the 580. I mean, I don't know if you can blame Aronowitz for the fact that the district court didn't enter a judgment with respect to the 192, especially after the second district court judge had come in after Judge Davis retired and had said, okay, now, do this. Well, Your Honor, I might not think it's fair, and yet I do attribute that to him. I think it is incumbent upon him. You still thought that they missed the statute of limitations run, that they should have appealed the 192 without a final judgment on the case? I would not have said statute of limitations, but I would have said that they waited too long. They should have proceeded and asked for that to be reduced to a judgment, and they failed to. The fact of the matter is the only person who ever asked for anything to be reduced to a judgment was me, because after the first abandonment by the plaintiff, I tried to bring closure to the case, and I actually moved for that relief. But there was no final judgment on 192 ever issued? That is absolutely correct. Except for abandonment. Yeah, that is absolutely correct, and that's why my response to Your Honor was in a limited sense, yeah, I would like to blame that on him, but I see your point. There was no final judgment for him technically to appeal. But there eventually was a final judgment on the 192. Absolutely was, and I do not contest he was timely in his appeal of that. Yeah. It does seem to me that they are separate in terms of the abandonment issue. They're certainly distinct. We might quibble over separate. Yes, Your Honor. If Your Honor is pleased, I would like to outline a few of the things I think were omitted or that are still important to this case. Well, let me add, you want to move on to the abandonment issue? Absolutely. Let me ask you, the burden, I mean, when the judge says you've got to come forward with reconstructing the record or whatever, that burden seems to me to fall equally on both parties. So why, I mean, you don't care if you're accused of abandonment because all of the burden falls on them, not on you. Why is there a problem here? I don't think there is a problem, and here's why. I think that the burden properly falls with the moving party. What Your Honor is referring to is a magistrate's ruling, if you will, that was on the 17th of February. And that magistrate's ruling did say the parties, we can't find the court file, the parties should work together to try to reconstruct it. That was, if you will, the law for us for about four days. Four days later, the judge entered an order closing the case. And my understanding of a judge's closing a case is that whatever might have been pending before is not pending anymore. So our position at that point was this case is closed. We took close. But it closed it without prejudice, coming back, right? Oh, no doubt, no doubt. Okay. But our position was, as we read it, this case has no pending orders at all. What the order from, if it's even an order, what the magistrate's ruling or recommendation was is this. We're going to close the case, if you will, and if you reconstruct the record and move to reopen the case, we will certainly consider that. Okay. And so the fairness comes here. Whoever wants to move to reopen a case, either in this situation or any other situation, has the burden to show why it should be reopened. I would readily concede that had they come back the next day, the next week, the next couple of months and said, we'd like to reopen the case, the judge would have, I'm sure, reopened the case eventually. Yeah, the problem is they couldn't have just come in. They couldn't just come in and say, I want to reopen. It was their obligation to reconstruct the record in order to make it possible to come in and reopen, right? There was a precondition. It wasn't just a matter of them coming in, knocking at the door and saying, we want to reopen. They were under an obligation in order to do that, to provide a reconstructed record, right? May I disagree? No. I think their obligation was this. Their obligation, according to what the magistrate suggested, was to either work together to reconstruct the record or do it on their own, if they please. Yeah, okay. To come to a stipulation with the other side, if they wanted to, or if failing that, and Judge Leonard made this point in her order, the one that's on appeal, if that didn't work, it was incumbent upon them, if they wanted to proceed, it was incumbent upon them to come back before the court. Let's say you wanted to attribute some malice to me, which, by the way, I would like to point out because there's some innuendo that I was not cooperating in stages. And may I just take a 60-second digression to say there's nothing on the record before this court, there's nothing on the record before the lower court, that any effort was ever made to work with me on the record. We filed an affidavit. They filed nothing. So if you'll permit me that digression. But back to the point. Let's say I did that. Let's say that I took his phone calls and I said, I don't want to work with you. He always had the option, as Judge Leonard pointed out, of coming back to the court and said, Glenn won't work with me. Or here's my suggestion. So I agree with you. What would have happened if they were just incapable of reconstructing the record in any viable fashion? And let's say either you said, I won't cooperate, or you just said, neither can I. What do they do then? Well, I have two responses to that. One, I don't know that the answer to that should make a difference on this appeal. But for just academic speculation, I would say that, and I did a little research on this, actually. I believe that what would happen is if the court felt like there was enough of a record to go forward, you could go forward. If the court felt like there was not enough record before them, but it could be supplemented, and sometimes it can be. Let's say you lost the day's testimony of Mr. Smith. Maybe you can supplement that with a deposition. The courts would apparently allow for something like that. But that kind of would have, could have, maybe should have speculation, I don't think we ever got anywhere near there. We didn't have any idea. In fact, may I suggest, to this day, we have no idea what he was able to do during those 33,084 hours that this case lie fallow. I don't know if he got any of the record put together. But did you all try to reconstruct the record? Did we try? I did receive a phone call, as I recall, and now Your Honor is asking me to testify, but I will. Well, just give me a yes or a no. Well, I made a suggestion that his paralegal work with my paralegal initially and see what everybody had in the file. And then the case was abandoned. We never heard anything forward. Certainly, had I wanted to proceed, it would have been incumbent upon me to do the same thing. Was the record ever supplemented? To my knowledge, no. No, there was no record that was ever supplemented. I don't know. The court had some record. It says in the judge's order they had some. I don't know that we were ever clear on what they were missing. And to my knowledge, well, I have no knowledge. I don't know what they ever found. Pacer was not in existence at the time. Oh, no, sir. No, no. Neither Pacer or Judge Prost or my children. No more questions? Thank you, Mr. Carney. Thank you, Your Honor. Excuse me. I'll be brief. We agree that 192 should be retried for the reasons pretty much put in our paperwork. Did you ask for a new trial? My view of what happened is that the lower court decided the 192 issues. It was all decided with Judge Davis's amended findings. So there was nothing else for us to do in that regard. We did ask and we didn't per se ask for a new trial after the mandate came down. If the judges will look at the joint status report, which is, I believe, at DE 218A993 of the appendix. After the remand came down, we took the position that... I'm sorry. What page was that again? I believe it's 993, A993. Okay. Our position was that because of the gaps in the record that this court found in its opinion, that the only way to fill those gaps in would be with a new trial. That was submitted. They, of course, opposed that. Judge Davis then... Wait. Where does it say that? It says whether there is to be a new trial or not. Parties agree with the remaining issues. In other words, when we're taking the position... Unfortunately, we have one page on this document. Yeah, I see. So I'm just trying to see where it says that you're requesting a new trial. What do you think was stated later in the document, Mr. Kerstner? Well, no. In the first page, plaintiffs believe the case has been remanded for further development of an evidentiary record and retrial of open issues. But that's not a new trial. No. We didn't ask for a new trial, but we suggested to Judge Davis that in disposing of the issues on the remand, we believe that implicit in the court's mandate, and by virtue of its opinion, was that it should be retried. All the issues should be retried. Judge Davis didn't accept that. Ultimately, we briefed the issues on the papers, essentially new ground... Well, it's kind of hard for us to surmise that, where it says at the end of that same page whether there is to be a new trial or not, and this will be addressed and developed at the end of this report. We don't have the end of the report. We don't know what was addressed or developed. Our error here was we didn't include the entire joint status report. Well, does the rest of the joint status report say, we absolutely think there's a need for a new trial? Yeah, we said that, and then the defendant opposed it. So there was this debate going on before Judge Davis issued his amended findings as to whether there was going to be a new trial or not. Judge Davis took the position that there was no new trial required, and then basically we submitted the issues on the remand on the paperwork, essentially on the basis of the cold trial record. Were you seeking a new trial, Mr. Burstein, with respect to the 192 infringement issue or the 580, I guess, license issue or both? Both. As the case progressed and Judge Davis retired, he had already decided the 192 issue, so a new trial in that regard doesn't make any sense. We then took the position, which Magistrate Judge Simonton appeared to accept, is that by virtue of the fact that Judge Davis had retired without deciding the 580 issues, that that in and of itself required a new trial on the 580 issues. So you weren't seeking a new trial on the 192 issue? Not after Judge Davis had already issued his ruling on the 192. You're saying you asked for it before he ruled, but then after he ruled you didn't. Okay, I understand. Yeah, because then when he retired, the fact finder was gone and our position was up. I understand. Thank you very much. Thank you, Mr. Burstein. Case submitted.